1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11   THOMAS DALE TONKIN,              )   NO. CV 17-4726-KS
                  Plaintiff,          )
12                                    )
            v.                        )   MEMORANDUM OPINION AND ORDER
13                                    )
                                      )
14   NANCY A. BERRYHILL, Acting       )
     Commissioner of Social Security, )
15                Defendant.          )
                                      )
16   _____ )

17

18                          INTRODUCTION

19

20         Thomas Dale Tonkin ("Plaintiff") filed a Complaint on June 27, 2017 seeking review

21   of the denial of his application for a period of disability and Disability Insurance Benefits

22   ("DIB") under Title II of the Social Security Act.  (Dkt. No. 1.)  The parties have consented,

23   pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate

24   Judge.  (Dkt. Nos. 4, 12, 20.)  On April 12, 2018, the parties filed a Joint Stipulation.  (Dkt.

25   No. 19 ("Joint Stip.").)  Plaintiff seeks an order reversing the Commissioner's decision and

26   remanding the matter for an award of benefits.  (Joint Stip. at 34-35.)  The Commissioner

27   requests that the Administrative Law Judge's decision be affirmed or, in the alternative,

28

                                        1

remanded for further proceedings. (*Id.* at 35-36.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 21, 2013, Plaintiff, who was born on July 16, 1956[1], protectively filed an application for a period of disability and DIB. (Administrative Record ("AR") 13, 53, 116-17.) Plaintiff alleged disability commencing on August 20, 2011 due to back pain, central canal stenosis, foraminal narrowing, disc degeneration, sciatica in both legs, lack of sleep and difficulty concentrating because of sciatica, loss of balance, and tripping. (AR 53, 116.) His "date last insured" for DIB eligibility was December 31, 2015. (AR 15.) After the Commissioner denied Plaintiff's application initially (AR 53-65, 66), Plaintiff requested a hearing (AR 73-74).

At a hearing held on September 3, 2015, at which Plaintiff appeared with counsel, an Administrative Law Judge ("ALJ") heard testimony from Plaintiff and a vocational expert. (AR 30-52.) On October 21, 2015, the ALJ issued an unfavorable decision denying Plaintiff's application for a period of disability and DIB. (AR 13-25.) On April 26, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-3.) This timely complaint seeking review of that denial followed. (Dkt. No. 1.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of August 20, 2011. (AR 15; 20 C.F.R. § 404.1520.) At step two, the ALJ found that

---

[1] Plaintiff was 57 years old on the application date and thus met the agency's definition of a person of advanced age. *See* 20 C.F.R. § 404.1563(e).

Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine. (AR 15.) The ALJ found that Plaintiff's other medically determinable impairments were non-severe. (AR 15-18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 18.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to "lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit (with normal breaks) for six hours in an eight-hour workday and stand and/or walk (with normal breaks) for six hours in an eight-hour workday. He can occasionally perform all postural activities." (AR 18.)

Based on the testimony of a vocational expert ("VE"), at step four, the ALJ found that Plaintiff could not perform his past relevant work as an electrician. (AR 23.) The ALJ did find however at step five that Plaintiff could perform other jobs existing in the national economy. (AR 23-24.) Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 24-25.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

Plaintiff raises three issues:

1. Whether the ALJ properly weighed certain medical opinions and records. (Joint Stip. at 8-9);

2. Whether the ALJ properly weighed Plaintiff's medical treatment in determining Plaintiff's credibility. (*Id.*); and

3. Whether the ALJ provided legally sufficient reasons to reject Plaintiff's credibility overall. (*Id.*)

4

The second and third issues both address whether the ALJ properly evaluated Plaintiff's credibility concerning his subjective statements about his symptoms and their limiting effects, therefore, the Court will address them together.  For the reasons discussed below, the Court concludes that these issues warrant reversal of the ALJ's decision.

## I.    Whether the ALJ Properly Evaluated the Opinions and Records (Issue One)

Plaintiff contends that the ALJ failed to properly weigh the opinions and records of two of his treating doctors.  (Joint Stip. at 9-18.)

### A.    Facts

Doctor Gene A. Bergmann is a Doctor of Chiropractic.  (AR 242.)  Dr. Bergmann has treated Plaintiff since May 2, 2001.  (AR 283.)  In a letter dated May 27, 2015, Dr. Bergmann states Plaintiff has "back and neck pain due to advanced lumbar disc degeneration and central stenosis."  (*Id.*)  Dr. Bergmann further states, "[t]his condition is not curable or revisable, and its advancement is part of the progression of the disease."  (*Id.*)  Dr. Bergmann's letter and treatment notes reflect that Plaintiff has received treatment on a monthly basis since 2001.  (AR 251-262, 283.)  The records from Dr. Bergmann's office also show Dr. Bergmann had a medical imaging report from 2006 of Plaintiff's lumbosacral spine (AR 247) and ordered an MRI of Plaintiff's lumbar spine in 2013 (AR 248-49).

Doctor Paul C. Moya is a Doctor of Osteopathic Medicine.  (AR 287, 288.)  On August 24, 2015, Dr. Moya filled out a medical statement form that does not specify when he started treating Plaintiff.  (*See* AR 286-87.)  On the form, Dr. Moya noted Plaintiff has limitation of motion of the spine and lumbar spinal stenosis.  (AR 286.)  Dr. Moya opined that Plaintiff suffered from moderate pain, could stand for 30 minutes at a time, could sit for 30 minutes at a time, could only work four hours per day, occasionally lift twenty pounds,

frequently lift 10 pounds, and could occasionally bend and stoop. (AR 287.) Dr. Moya apparently ordered physical therapy for Plaintiff as he is the doctor listed and to whom the physical therapist sent Plaintiff's evaluation. (AR 288.) The ALJ, however, stated, "it is unclear whether this doctor even treated [Plaintiff], as there is no treatment note from this doctor." (AR 22.) Plaintiff challenges this statement, arguing that Dr. Moya's signature is present in the medical record in Exhibit 1F on various pages (AR 234-37). (Joint Stip. at 4.)

## B.    Applicable Law

There are three categories of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. § 404.1527.[2]   Treating physician opinions should be given more weight than examining or nonexamining physician opinions. *Orn*, 495 F.3d at 632. If the treating physician's opinion is not contradicted by another doctor, it may be rejected only if the ALJ provides "clear and convincing reasons supported by substantial evidence in the record." *Id.* If the treating physician's opinion is contradicted by another doctor, it may be rejected only by "specific and legitimate reasons supported by substantial evidence in the record." *Id.*

Examining physician opinions too are given more weight than nonexamining physician opinions. *Lester*, 81 F.3d at 830. If the examining physician's opinion is not contradicted by another doctor, it too may be rejected only if the ALJ provides clear and convincing reasons supported by substantial evidence in the record. *Id.* If the examining physician's opinion is contradicted by another doctor, it may be rejected only if there are specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 830-31.

---

[2]    Effective March 27, 2017, the Social Security Administration revised its regulations governing the evaluation of medical opinion evidence, including 20 C.F.R § 404.1527.  Claims filed before March 27, 2017, are governed by 20 C.F.R. § 404.1527, while claims filed on or after March 27, 2017 are governed by § 404.1520c.  Thus, the revisions are not applicable or relevant to the analysis here of Plaintiff's October 21, 2013 application for DIB benefits.

An ALJ can satisfy the substantial and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632.

Some medical sources are classified as "not acceptable" or "other sources," including nurse practitioners and chiropractors. *See* Social Security Ruling ("SSR") 06-03p. The opinion of an acceptable medical source is given more weight than an "other source" opinion. 20 C.F.R. § 404.1527(b), (f). Notably, evidence from "other sources" is not sufficient to establish a medically determinable impairment. SSR 06-03p. Nonetheless, when evaluating other source opinions, the ALJ must consider "their qualifications, whether their opinions are consistent with the record evidence, the evidence provided in support of their opinions, and whether the other source [] "has a specialty or area of expertise related to the individual's impairment." *Miller v. Colvin,* Case No. 2:16-CV-02161 (VEB), 2017 WL 899954, at *6 (C.D. Cal. Mar. 7, 2017) (citing SSR 06-03p; 20 CFR §§ 404.1513(d), 416.913(d)).

Further, an other source opinion "is competent evidence that an ALJ must take into account" and the ALJ must give "germane reasons" before discounting an other source opinion. *Willis v. Astrue*, No. CV 10-4994-OP, 2011 WL 1584076, at *7 (C.D. Cal. Apr. 27, 2011); *Miller v. Colvin*, 2017 WL 899954, at *6 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Moreover, SSA regulations specifically provide that an other source opinion "may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source" in circumstances where "he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." 20 C.F.R. § 404.1527(f)(1).

//

//

1    **C.    Analysis**

3        Here, Plaintiff challenges the ALJ's treatment of the opinions of Dr. Bergmann, a
4    chiropractor, and treating physician, Dr. Moya.  (Joint Stip. at 9-12.)  Defendant argues that
5    the ALJ provided legally sufficient reasons supported by the record for discounting the
6    opinions of Drs. Bergmann and Moya.  (*Id*. at 12-16.)

8        **i.    Dr. Bergmann**

10       Dr. Bergmann provided a single treating source statement, in which he states:
11   "[Plaintiff] has been under my care for back and neck pain due to advanced lumbar disc
12   degeneration and central stenosis from May 2, 2001 to the present" and he indicates that his
13   office sees Plaintiff "once a month to help manage and support this condition."  (AR 283, Ex.
14   6F.)  Dr. Bergmann further noted that Plaintiff's "condition is not curable or revisable, [sic]
15   and its advancement is part of the progression of the disease."  (*Id*.)  Dr. Bergmann's three-
16   page source statement included results of Plaintiff's August 28, 2013 lumbar spine MRI.  (AR
17   284-285.)

19       The ALJ noted that Dr. Bergmann treated Plaintiff once a month and acknowledged
20   that the 2013 MRI of Plaintiff's lumbar spine showed Plaintiff had moderate to severe left-
21   sided disc degeneration, central canal stenosis, left foraminal narrowing at the L4-L5 level,
22   and moderate to severe right foraminal narrowing at the L5-S1 level.  (AR 20.)  The ALJ
23   gave little weight to Dr. Bergmann's opinion provided in a 2003[3] claim for Disability
24   Insurance Benefits indicating that Plaintiff was disabled because the ALJ noted that a
25   disability determination is "reserved to the Commissioner" and the opinion concerned "a

---

[3] The ALJ mistakenly referred to this disability claim form as being from March 2013.  (*Compare* AR 22 and AR 265 (Ex. 2F).)

short and finite period." (AR 22, 265.) These observations comprise the entirety of the ALJ's assessment of Dr. Bergmann's opinions and records.

Plaintiff argues the ALJ's treatment of Dr. Bergmann's opinions and records is legally insufficient and that while Dr. Bergmann, as a chiropractor, is not an acceptable medical source, he is a treating source whose opinion can still outweigh that of an acceptable medical source. (Joint Stip. at 3, 4, 10, 17.) Defendant responds that Dr. Bergmann is not a treating doctor because he is not an acceptable medical source, and the ALJ properly gave little weight to his opinions because Dr. Bergmann cannot provide a diagnosis as a chiropractor, his 2003disability opinion is irrelevant, and Plaintiff has not shown how his treatment records are relevant. (Joint Stip. at 7, 8, 13, 14.)

While Dr. Bergmann is not an acceptable medical source and so cannot be considered as a treating source, the ALJ was nonetheless required to provide a more detailed evaluation of his treatment records and opinion letter as an "other source" and to provide germane reasons for giving his opinion no weight. 20 C.F.R. § 404.1527(f); SSR 06-03p. The Ninth Circuit has held that an ALJ erred in failing to recognize that a nurse practitioner was an "other source" who could "provide evidence about 'the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work.'" *Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) (citing 20 C.F.R. § 404.1513(d)); *see also Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017). The Ninth Circuit further held the ALJ erred in assigning little weight to the nurse practitioner's "summary reports" and "overall prognosis." *Garrison*, 759 F.3d at 1014.

Here, the ALJ acknowledged that Plaintiff received treatment with Dr. Bergmann once a month for his back problems and that a "[d]iagnostic test does support some abnormality of the [Plaintiff's] back," and the ALJ gave Dr. Bergmann's opinion on a March 20, 2003 claim for Disability Insurance Benefits form "no weight" because the determination of disability is

reserved exclusively to the Commissioner under Social Security law.  (AR 20, 22.)  While the ALJ is correct on the discrete issue of the ultimate disability determination, the ALJ failed to provide germane reasons for failing to consider other aspects of Dr. Bergmann's assessment of Plaintiff's chronic degenerative disc condition.  Dr. Bergmann clearly examined Plaintiff and saw him regularly regarding a well-documented back condition that Dr. Bergmann assessed as "not curable or revisable."  *See* 20 C.F.R. § 404.1527(c)(1).  He also appears to have the longest treatment relationship with Plaintiff, which is frequent and included ordering or reviewing diagnostic imaging of Plaintiff's spine.  *See* 20 C.F.R. § 404.1527(c)(2).  His opinion as to the severity of Plaintiff's degenerative disc condition is supported by the diagnostic images.  (AR 283-285; and s*ee* 20 C.F.R. § 404.1527(c)(3).  Although his records are sparse, Dr. Bergmann's opinion and records are consistent with the record as a whole.  *See* 20 C.F.R. § 404.1527(c)(4).  Yet, the ALJ neither discussed any of these elements of Dr. Bergmann's opinion nor gave germane reasons for not doing so.

While the Orthopedic Consultative Examiner ("CE") opined that Plaintiff had a medium RFC, this was based on a single examination.  (AR 269-73.)  The CE reviewed the same 2013 MRI, did not take any other images, examined Plaintiff, and diagnosed him with degenerative disc disease and lumbar musculoligamentous strain.  (AR 269-73.)  As the CE's diagnosis was largely the same, his opinion as to Plaintiff's RFC is entitled to less weight as he does not have the same longitudinal picture of Plaintiff's condition as Dr. Bergmann.  *See* 20 C.F.R. § 404.1527(c)(2).  As noted above, chiropractors are not considered acceptable medical sources, so specializing in chiropractic medicine does not add weight to Dr. Bergmann's opinion or records.  *See* 20 C.F.R. § 404.1527(c)(5).  But SSA regulations provide that other source opinion "may outweigh the medical opinion of an acceptable medical source, including the medical opinion of a treating source" in circumstances where "he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole."  20 C.F.R. § 404.1527(f)(1).

Applying these factors here, the ALJ failed to provide germane reasons for not giving any weight to Dr. Bergmann's opinion. The ALJ's failure to properly evaluate Dr. Bergmann's opinion and records is reversible error.

### ii.   Dr. Moya

The ALJ noted that Dr. Moya filled out a medical opinion form and summarized Dr. Moya's limitations for Plaintiff. (AR 20.) The ALJ gave this opinion "little weight" because the ALJ stated it is not clear whether Dr. Moya treated Plaintiff as there is no treatment note from him and his medical opinion is in the form of a check-box report with no explanation or reference to objective evidence or the treatment record. (AR 22.)

Plaintiff contends the ALJ erred in not recognizing Dr. Moya as Plaintiff's treating physician, which is evident from his signature on certain treatment records and his referral of Plaintiff to physical therapy, whose opinion was supported by the record. (Joint Stip. at 4, 12, 17-18.) Defendant argues that the referenced signatures are not clear evidence that Dr. Moya treated Plaintiff as his opinion is dated two years after the treatment records with the unclear signatures, his name on the referral is not evidence that he personally treated Plaintiff, his opinion does not specify the length of the treatment relationship, and his opinion is an unsupported check-box form. (Joint Stip. at 7-8, 14-16.)

The ALJ did not clearly state whether he evaluated Dr. Moya's opinion as a treating physician opinion. He remarked that "it is unclear whether this doctor even treated" Plaintiff. (AR 22.) While the ALJ noted this ambiguity in the record, there is no evidence to indicate that the ALJ took any steps to resolve the ambiguity about Dr. Moya's treating relationship with Plaintiff. It is well-settled in this circuit that an ALJ has an affirmative duty to further develop the record when "there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

Here, the ALJ could have asked Plaintiff during the hearing for more information about his treatment relationship with Dr. Moya. The evidence that Plaintiff identifies to establish Dr. Moya as Plaintiff's treating physician is sparse. A referral to physical therapy clearly lists Dr. Moya's name as Plaintiff's treating physician. (AR 288.) Plaintiff points to largely illegible signatures on three different treatment records as being Dr. Moya's, but none of these documents list Dr. Moya's name. (*See* AR 235-37, 287.) Further, there is little in the record to establish the length and frequency of any treatment Plaintiff received from Dr. Moya. Thus, because the ALJ failed to resolve this ambiguity in the record, it is unclear precisely what weight should have been given to Dr. Moya's opinion as a medical source. *See* 20 C.F.R. § 404.1527(c). This error was not harmless.

Dr. Moya opined that Plaintiff can only work four hours per day. (AR 287.) If Dr. Moya is determined to be a treating physician, then his opinion is entitled to "controlling weight" unless contradicted. *See Orn v. Astrue*, 495 F.3d at 633. Furthermore, if Dr. Moya is not found to be a treating physician within the SSA guidelines, then Plaintiff has no treating physician records as part of the ALJ's consideration because Dr. Bergmann, his long-standing chiropractor, is considered an "other source" and not a "medically acceptable source" under the then-applicable guidelines. The ALJ erred in not providing a more detailed evaluation of Dr. Moya's medical opinion supported by specific and legitimate reasons.

Accordingly, the Court finds the ALJ's failure to resolve the ambiguity in the record regarding Dr. Moya's treating relationship with Plaintiff and, as discussed above, the ALJ's failure to properly evaluate the opinion of Dr. Bergmann are both material legal errors that warrant remand for further proceedings.

//

## II.  Whether the ALJ Properly Evaluated Plaintiff's Credibility Regarding His Subjective Symptom Testimony (Issues Two and Three)

Plaintiff's second and third disputed issues both challenge the ALJ's determinations regarding Plaintiff's credibility.  (Joint Stip. at 8-9.)  Issue Two concerns the ALJ's discounting of Plaintiff's credibility based on Plaintiff's "conservative" treatment, while in Issue Three, Plaintiff maintains that the ALJ improperly ignored Plaintiff's testimony about his impairments. (*Id*.)  Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject his credibility concerning his subjective pain testimony.  (Joint Stip. at 18-20, 23-27.)  Defendant maintains that the ALJ properly considered Plaintiff's treatment history in evaluating Plaintiff's subjective statements about his symptoms.  (*Id.* at 20-22.)  As noted above, because both issues concern Plaintiff's credibility, the Court addresses them together.

### A.  Plaintiff's Testimony

Plaintiff testified at the hearing about his pain and physical limitations.  His daily activities include waking up, showering, drinking coffee, stretching, and going to the store a couple times a week.  (AR 35.)  He drives to the store and pushes the grocery cart, but his wife lifts and carries the groceries.  (AR 35-36.)  His wife cleans the house, does the laundry, and cooks but he does help cut vegetables.  (AR 36-37, 43.)  He waters plants on his front and back patios, but he does not sweep outside anymore because it hurts his back.  (AR 36.)  He said that before he was let go from his last job as an electrician, he was experiencing intense sciatic pain in his back, lower back, and underneath his buttocks, but it has gotten worse over time.  (AR 37-38.)  Plaintiff testified he is unable to lift a gallon of milk, do physical work, climb a ladder, or get down on his knees.  (AR 38.)  He explained that the pain in his right leg extends down the entire leg to the top of his foot and the pain in his left leg extends half-way down the leg.  (AR 38.)  He said the pain in his legs lasts four or five days out of the week.

(AR 39.)  He said his back pain is predominantly in his lower back on both sides of his spine and the pain is present for most, if not all, of a given week.  (AR 39-40.)

He takes two pain medications that he said help: "a little bit sometimes.  It depends how many I take and how often and it just mellows the pain out a little bit.  But it's not no cure-all."  (AR 41-42 (errors in original).)  Plaintiff did not state any side effects from the pain medications.  (AR 42.)  Plaintiff further testified he can sit for ten to fifteen minutes and stand for ten minutes.  (AR 44.)  He also said walking is difficult, that he needs help to stabilize himself while walking, and he can only walk short distances "like 20 feet."  (AR 44, 46.)  He said he can only lift a quart of milk.  (AR 44.)  He also testified that prior to going on pain medication, he was drinking a six-pack of beer a day because of the pain.  (AR 45.)

Plaintiff's testimony is largely consistent with the pain questionnaire and function report, both of which he completed on December 26, 2013.  (AR 159-60, 161-68.)  In the pain questionnaire, he listed his pain medications include Tramadol Hydrochloride, Cyclobenzaprine Hydrochloride, and Ibuprofen.  (AR 160.)

## B.    Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible.[4]  *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical

---

[4]    Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p, which required the ALJ to assess the credibility of a claimant's statements.  SSR 16-3p focuses on the existence of medical cause and an evaluation of "the consistency of the individual's statements about the intensity, persistence, or limiting effects of symptoms with the evidence of record without consideration of the claimant's overall 'character or truthfulness'." *See* Guide to SSA Changes in Regulations and Rulings 2016-17, June 2017. The revision is not applicable to Plaintiff's application, because the ALJ rendered his decision on October 21, 2015, before the effective date of the rule change.  (AR 13-25.)  But the Ninth Circuit has acknowledged that SSR16-3p is consistent with existing precedent that requires that the assessments of an individual's testimony be focused on evaluating the "intensity and persistence of symptoms" after the ALJ has found that the individual has medically determinable impairments that could reasonably be expected to produce those symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017).

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Treichler*, 775 F.3d at 1102 (citation omitted); *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear-and-convincing standard").

In weighing a plaintiff's credibility, the ALJ may consider a number of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

### C.    Analysis

The ALJ found Plaintiff presented objective medical evidence of degenerative disc disease of the lumbar spine which "could reasonably be expected to cause the alleged symptoms." (AR 15, 19.) The ALJ did not indicate that he found evidence of Plaintiff

malingering. Accordingly, the ALJ was required to provide clear and convincing reasons supported by substantial record evidence to discount Plaintiff's credibility. The ALJ gave several reasons for rejecting Plaintiff's credibility based on his subjective symptom testimony. (AR 20-21.)

### a. Conservative Treatment

The ALJ largely discounted Plaintiff's credibility based on a lack of objective medical evidence for the severity of the alleged symptoms. (AR 20, 21.) It is well-settled that the ALJ "may not discredit the claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 347 (9th Cir. 1991); *see also* SSR 96-7p. While the absence of objective medical evidence may be considered as a factor in credibility determinations, it "must be considered in the context of all the evidence." SSR 96-7p.

The ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects" of his symptoms "not entirely credible" because Plaintiff received "very little treatment" and the treatment he did receive was conservative. (AR 20, 21.) The ALJ observed that Plaintiff sees a chiropractor once a month (AR 20), takes pain medication with no side effects (AR 20), and recently went to physical therapy (AR 21). The ALJ noted that "[d]iagnostic test does support some abnormality of [Plaintiff's] back," but he also noted that Plaintiff testimony that he had not received any physical therapy, steroid injections, does not wear a back brace, does not use a cane to ambulate, had not undergone surgery (AR 21), and Plaintiff's condition appears stable (AR 20-21). Further, the ALJ noted that Plaintiff's physical examination by the CE was largely "unremarkable" despite tenderness, muscle spasm, and limited range of spinal motion. (AR 21.)

While conservative treatment can be a clear and convincing reason to reject a Plaintiff's credibility, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *See Revels*, 874 F.3d at 667. The ALJ is also required to consider any explanations the Plaintiff gives for not seeking additional medical treatment. SSR 96-7p. One reason why a plaintiff may not seek further treatment includes being "advised by a medical source that there is no further, effective treatment that can be prescribed or undertaken that would benefit the individual." *Id.* Here, Plaintiff's chiropractor, Dr. Bergmann, states that Plaintiff's "condition is not curable or revisable, and its advancement is part of the progression of the disease." (AR 283.) Other than Dr. Bergmann's letter, there is no opinion in the record stating whether Plaintiff's condition would benefit from additional treatments such as steroid injections or surgery and the ALJ did not ask Plaintiff during the hearing why he had not sought additional medical treatment for his condition.

Accordingly, in light of the record, the ALJ's discounting of Plaintiff's credibility on the basis of generally conservative treatment is not clear and convincing supported by substantial record evidence and warrants remand for further proceedings.

### b. Plaintiff's Subjective Statements

The ALJ also found Plaintiff's subjective statements about his symptoms less than credible because "the objective evidence is consistent with the residual functional capacity and inconsistent with the claimant's allegations that he is unable to perform any work activity." (AR 20.) The Ninth Circuit has called this the "backward approach" to determine a claimant's credibility. *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017). Rather, "an ALJ must take into account a claimant's symptom testimony when determining the RFC" because determining the RFC prior to determining a claimant's credibility regarding

symptom testimony is "inconsistent with the Social Security Act and should not be used in disability decisions." *Id.*

The ALJ continued this flawed approach when discussing the 2013 MRI of Plaintiff's lumbar spine. (AR 20.) The MRI showed "moderate to severe left-sided disc degeneration, central canal stenosis, and left foraminal narrowing" at the L4-L5 level as well as "moderate to severe right foraminal narrowing" at the L5-S1 level. (AR 284-85.) After noting these objective medical findings, the ALJ said:

> While the foregoing tests are consistent with some abnormality of the claimant's back, there is no evidence the claimant's back impairment could not be conservatively managed with medications or that it would render him incapable of sitting or standing or walking for extended periods or engage in light work activity.

(AR 20.)

The ALJ next explained that Plaintiff's statements were not fully credible because Plaintiff failed to follow a prescribed course of treatment. (AR 21.) The referenced treatments, however, were a prescription for fenofibrate and a recommended prescription for statins (AR 21, 230, 238), both of which treat high cholesterol.[5] The ALJ does not explain how Plaintiff's failure to take blood cholesterol medication undermines his credibility concerning the pain in his back and legs. *See* 20 C.F.R. § 404.1530(a). Therefore, this is also not a clear and convincing reason to reject Plaintiff's credibility.

---

[5] *See* https://www.drugs.com/fenofibrate.html; and https://www.drugs.com/mca/statin-side-effects-weigh-the-benefits-and-risks (last visited August 30, 2018).

18

Another reason the ALJ gave for rejecting Plaintiff's credibility was based on Plaintiff's reported daily activities. (AR 21.) The ALJ states Plaintiff, "is able to tend to his personal care, shop in stores, handle money, and drive." (AR 21.) These activities as described by Plaintiff are not dispositive that he is capable of working a regular work day. (*See* AR 34-46.) "We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016 (citations omitted). A review of Plaintiff's testimony, pain questionnaire, function report, and the function report completed by his wife show Plaintiff's daily activities are limited due to his back pain. (AR 34-46, 159-60, 161-68, 169-78.) Thus, the ALJ's reliance on Plaintiff's ability to perform limited daily activities is not a clear and convincing reason supported by substantial record evidence to reject his credibility.

A further reason the ALJ provided for rejecting Plaintiff's credibility was that he stopped working not because of his alleged impairments but because he was let go as a result of a layoff. (AR 21.) The ALJ also found "there is no evidence of a significant deterioration in the claimant's medical condition since that layoff." (AR 21.) But a 2013 MRI and Plaintiff's own testimony provide record evidence inconsistent with the ALJ's statement that "there is no evidence of a significant deterioration in the claimant's medical condition since that layoff." (AR 21.) Dr. Bergmann, who had the longest longitudinal treating relationship with Plaintiff, opined that Plaintiff's condition is progressive and neither "curable nor revisable." (AR 283). Thus, Plaintiff's work history on its own is not a legally sufficient reason for the ALJ to reject his credibility as to the severity of his symptoms.

Accordingly, because the ALJ did not provide legally sufficient reasons to support his adverse credibility determination, the matter must be remanded.

### III. **Remand Is Warranted**

Plaintiff argues that the matter should be remanded for an immediate award of benefits. (Joint Stip. at 34.)  However, despite the ALJ's errors identified above, the Court finds that this matter is not appropriate for a remand for an award of benefits because it is not clear from the record that, if the ALJ properly credited Plaintiff's statements and the opinions of Drs. Bergmann and Moya, that he would be required to find Plaintiff disabled on remand.  *See Garrison*, 759 F.3d at 1020; *see also id.* n.26. Accordingly, the Court remands for further development of the record, including the proper consideration of the statements and testimony of Plaintiff and the opinions of Drs. Bergmann and Moya.

### CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED AND REMANDED for further administrative proceedings consistent with this Order.  On remand, the ALJ is specifically directed to resolve any ambiguity in the record concerning Dr. Moya's status as an acceptable medical source.

//
//
//
//
//
//
//
//
//
//
//

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and counsel for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: August 31, 2018

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE